**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| PRUDENTIAL INSURANCE COMPANY OF AMERICA; PRUDENTIAL BANK AND TRUST; FSB; and THE GIBRALTAR LIFE INSURANCE COMPANY, LTD., | : : : : : | **OPINION** |
|  | : | Civ. No. 2:12-cv-03489 (WHW) |
| Plaintiffs, | : : |  |
| v. | : : |  |
| J.P MORGAN SECURITIES, LLC; J.P. MORGAN MORTGAGE ACQUISITION CORPORATION; CHASE HOME FINANCE, LLC; J.P. MORGAN ACCEPTANCE CORPORATION I; CHASE MORTGAGE FINANCE CORPORATION; CHASE FUNDING, INC.; EMC MORTGAGE, LLC; MASTER FUNDING, LLC, and BEAR STEARNS ASSET BACKED SECURITIES I, LLC., | : : |  |
| Defendants. |  |  |

**Walls, Senior District Judge**

Plaintiffs, the Prudential Insurance Company of America, Prudential Bank and Trust, FSB, and the Gibraltar Life Insurance Company, Ltd., (collectively "Plaintiffs"), move to remand their state and federal law causes of action to the Superior Court of New Jersey, Law Division, Essex County. ECF No. 8. Their claims include state claims of common law fraud, fraudulent inducement, aiding and abetting fraud, negligent misrepresentation, and violations of New Jersey's civil RICO statute, as well as federal claims under the 1933 Securities Act. Under

**NOT FOR PUBLICATION**

Federal Rule of Civil Procedure 78, this motion is decided without oral argument. Plaintiffs'
motion for remand is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Between 2005 and 2007, Plaintiffs purchased over $523 million in residential mortgage-
backed securities from Defendants J.P Morgan Securities, LLC, J.P. Morgan Mortgage
Acquisition Corporation, Chase Home Finance, LLC, J.P. Morgan Acceptance Corporation I,
Chase Mortgage Finance Corporation, Chase Funding, Inc., EMC Mortgage, LLC, Master
Funding, LLC, and Bear Stearns Asset Backed Securities I, LLC, (collectively "Defendants").
Compl. ¶ 1. Defendants acted as, or were current successors to, or in control of, entities acting as
sponsor, underwriter, and/or depositor in the relevant offerings. *Id.* In April of 2012, Plaintiffs
filed a complaint in the Superior Court of New Jersey, Law Division, Essex County. Docket No.
L-3085-12. Plaintiffs claim that "as a result of Defendant's systematic abandonment of their
disclosed underwriting guidelines, the default rates on the mortgage loans have soared and the
value of Prudential's Certificates have plummeted." Mot. to Remand 3. Plaintiffs allege
Defendants made false statements of material fact, that Defendants' representations were false
and misleading, that Defendants knew it, and that Prudential detrimentally relied upon
Defendants' misconduct. Compl. ¶¶ 1-2. The Complaint also alleges Plaintiffs' purchase of
residential mortgage-backed securities certificates were reliant upon misrepresentations made by
Defendants. *Id.*

Plaintiffs filed four state law claims: 1) common law fraud and fraudulent inducement by
all Defendants; 2) aiding and abetting common law fraud against defendants J.P. Morgan
Acquisition, CHF, Chase Funding, CMFC, J.P. Morgan Acceptance, EMC, Master Funding, and
BSABS; 3) negligent misrepresentation against all Defendants; and 4) New Jersey Civil RICO

2

NOT FOR PUBLICATION

claims alleging racketeering activity against all Defendants. Plaintiffs also filed two non-removable federal claims under sections 11 and 12(a)(2) of the Securities Act of 1933. Compl. ¶¶ 124-125, 127, 129, 143, 145.

Defendants moved to remove the proceedings from state court. ECF No. 1. Defendants contend that this action is removable pursuant to 28 U.S.C. §§ 1452(a), 1334(b) because it is "related to" pending bankruptcy proceedings arising under Title 11 of the United States Code. Not. of Removal 1-2. Defendants also contend this action is removable pursuant to federal question jurisdiction, 28 U.S.C. §§ 1441(a), 1331, because under the Edge Act, the suit arises out of "international or foreign financial operations." *Id.* 12 U.S.C. § 632.

Plaintiffs responded with this Motion to Remand, contending this Court lacks subject-matter jurisdiction to hear their claims under either "related to" bankruptcy jurisdiction or the Edge Act, and in the alternative, urging this Court to remand under the permissive abstention provisions of 28 U.S.C. §§ 1331(c)(1) and 1452(b), available under the Bankruptcy Code.[1] ECF No. 8.

## STANDARD OF REVIEW

When confronted with a motion to remand, the removing party has the burden to establish the propriety of removal. *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991). And "removal statutes 'are to be strictly construed against removal, and all doubts resolved in favor of remand.'" *Id.* at 111 (citations omitted). "Construing the removal statutes strictly . . . gives proper weight to the plaintiff's choice of forum." *Zelma v. United Online Commc'ns, Inc.*, No. 08-1030, 2008 WL 2625349, at *2 (D.N.J.

---

[1]     Plaintiffs make an additional argument that Defendants' Removal Notice is legally deficient because Defendants did not include the indemnification agreements upon which Defendants relied in their Notice of Removal. Mot. to Remand 5-7. But any supposed procedural defect has since been cured by Defendants inclusion of the relevant documents, Musla Declaration Exs. 2-22, and Plaintiffs have abandoned this claim in their Reply Brief.

**NOT FOR PUBLICATION**

June 27, 2008) (citations omitted).  Indeed, where "there is any doubt as to the propriety of removal, [the] case should not be removed to federal court." *Brown v. Francis*, 75 F. 3d 860, 865 (3d Cir. 1996).

**DISCUSSION**

I.     **"Related to" Bankruptcy Jurisdiction**

Section 1452(a) of the Bankruptcy Code allows for removal from state court claims that arise under Section 1334(b)'s "related to" jurisdiction.  Under Section 1334(b) of the Bankruptcy Code "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). This section was "intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984) *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995).

In *Pacor*, the Third Circuit established a very broad standard for "related to" jurisdiction and held that a state court proceeding need only "*conceivably have any effect on the estate being administered in bankruptcy.*" 743 F.2d at 994 (emphasis in original) (internal citations omitted). An action does not even need to be directly against a debtor's property; "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*  However, the Supreme Court has cautioned that this standard is not "limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). Rather, as the *Pacor* court itself noted, "[t]here must be some nexus between the 'related' civil proceeding and the title 11 case." *Pacor*, 743 F.2d at 994. Indeed, even in *Pacor* the Third Circuit found there

4

**NOT FOR PUBLICATION**

was no "related to" jurisdiction because there was no "automatic liability on the part of the estate." *Id.*  Instead, all issues regarding possible liability needed to be resolved in a subsequent third-party impleader action, which was too attenuated to confer jurisdiction. *Id.* at 995.

Several of the $523 million in residential mortgage backed securities purchased by Plaintiffs were backed by entities that have filed bankruptcy petitions, or whose parent corporations have filed bankruptcy petitions (henceforth the "Bankrupt Originators"[2]). Not. of Removal ¶ 15. Pending before various U.S. Bankruptcy Courts throughout the country are twelve such bankruptcy proceedings. *Id.* ¶ 16. Eleven of the Bankruptcy Originators originated nearly 40,000 loans in twelve of the twenty-three Offerings at issue. Opp. to Mot. 6.; Compl. Exs. A-1 – A-4.  Defendants have explicit indemnification clauses in the offering materials of ten of the Bankrupt Originators.[3] Opp. To. Mot. 5

The indemnification clause with the Bankrupt Originator, Fremont, is typical of the clauses found throughout the Bankrupt Originator's Offering Materials with Defendants. Musla Declaration 2. The Fremont indemnification clause states:

> Fremont hereby agrees to indemnify and hold harmless Bear
> Stearns . . . . against any and all losses, claims, expenses, damages
> or liabilities to which the Indemnified Party may become subject,
> under the 1933 Act or otherwise, including, without limitation,
> with respect to disputes between the parties, insofar as such losses,
> claims, expenses, damages or liabilities (or actions in respect
> thereof) arise out of or are based upon any untrue statement or
> alleged untrue statement or alleged untrue statement of material

---

[2]    Defendants identify these Bankrupt Originators as including but not limited to:
"Accredited Home Lenders, Inc. ("Accredited"), Aegis Mortgage Corporation ("Aegis"),
Alliance BanCorp ("Alliance"), Choice Capital Funding, Inc. ("Choice Capital"),
Fieldstone Mortgage Company ("Fieldstone"), First NLC Financial Services, LLC ("First
NLC"), Fremont Investment and Loan ("Fremont"), Irwin Mortgage Corporation
("Irwin"), MILA Incorporated ("MILA"), New Century Mortgage ("New Century"),
People's Choice Home Loan, Inc. ("People's Choice"), ResMAE Mortgage Corp.
("ResMAE"), and United Financial Mortgage Corporation ("United", n/k/a Alliance).
These Bankrupt Originators are: Accredited, Aegis, First NLC, Fremont, Irwin, MILA,
People's Choice, ResMAE, Alliance (including entity f/k/a United).

**NOT FOR PUBLICATION**

> fact contained in the . . . Prospectus Supplement [including Offering Materials], dated October 25, 2004.

*Id.* 11.

Defendants' contract with the Bankrupt Originator Fieldstone also includes an agreement to indemnify Defendants for attorney's fees for legal expenses. The clause states that Fieldstone:

> agrees to reimburse the Depositor and each such officer, director and controlling person promptly upon demand for any legal or other expenses reasonably incurred by and any of them in connection with investigating or defending or preparing to defend against any such loss, claim, damage, liability or action as such expenses are incurred.

*Id.* 6,¶ 1a.

    A. <u>The General Indemnification Clauses Do Not Confer "Related To" Jurisdiction</u>

    1. <u>Maturity of the Indemnification Clauses</u>

All of the indemnification clauses in the offering materials of the various Bankrupt Originators contain similar terms. *See Id.* 8-21. The Bankrupt Originators agree to indemnify the Defendants against losses insofar as those losses arise from the Bankrupt Originator's fault. The indemnification clause with Fremont, for example, states that Fremont "agrees to indemnify and hold harmless Bear Stearns . . . . against any and all losses . . . to which the Indemnified Party may become subject . . . insofar as such losses, claims, expenses, damages or liabilities (or actions in respect thereof) *arise out of or are based upon any untrue statement or alleged untrue statement or alleged untrue statement* of material fact contained in the . . . Prospectus Supplement." *Id.* Exh. 1 (emphasis added).

Plaintiffs argue the indemnification clauses found in the Bankrupt Originators' contracts do not provide a sufficient nexus to confer "related to" jurisdiction because they have not

**NOT FOR PUBLICATION**

matured. Mot. To Remand 7-10.  Plaintiffs claim they have not matured because the clauses are contingent on future litigation to be enforced. *Id.*

Defendants counter that the indemnification clauses have already matured because they are contractual. Opp. to Mot. 10. *See Stitching Pensioenfonds ABP v. Countrywise Fin. Corp.*, 447 B.R.302, 309 (C.D. Ca. 2010) (finding an indemnification agreement "'based upon or arising out of any act or omission on the part of [the Bankrupt Originator]' . . . arose immediately upon the filing of this lawsuit"); *Allstate Insurance Co. v. Ace Securities Corp.* 2011 WL 3628852, at \*4 (S.D.N.Y Aug. 17, 2011) (finding, without examination of the indemnification language that the "rights of indemnification arose immediately upon the filing of the lawsuit, covering the costs of litigation regardless of whether Defendants are found liable.").

But "not all indemnification agreements between a defendant in a civil action and a non-party bankrupt debtor create 'related to' jurisdiction . . . . Only when the right to indemnification is established and is not contingent on the filing of a separate action." *Steel Workers Pension Trust, v. Citigroup, Inc. et. al*, 295 B.R. 747, 753 (E.D. Penn. July 17, 2003). Instead, one must look to see whether the "debtor's liability automatically triggered when the purported related action against the party seeking indemnification begun." *Id.*

Defendants argue that because *Steel Workers* involved a common law indemnification claim, it has no bearing here. Opp. To Remand 9. That is not so. To determine whether a contractual indemnification agreement is "contingent on the filing of a separate action," one must look to the text of the agreement. *Id; see, e.g., State of New Jersey, Dep't of Treasury, Div. of Investment v. Fuld*, 2009 WL 1810350, at \*4 (D. NJ June 25, 2009) (finding "related-to" jurisdiction after examination of the indemnification agreement which stated, in part, the costs of any suit "shall . . . be paid by the Corporation in advance of the final disposition of such action.")

**NOT FOR PUBLICATION**

An examination of the identification clauses in the present case reveals that the Bankrupt Originator's liability did not accrue upon the filing of this suit.

The suit before this Court involves alleged untrue statements by *Defendants*; it does not involve alleged untrue statements by the *Bankrupt Originators*. While Defendants may wish to claim that the fraud on behalf of the Bankrupt Originators underlies the Plaintiff's complaint, a lawsuit establishing the Bankrupt Originators' liability is not before this court. A separate suit would be required to establish whether the Bankrupt Originators' indemnification clause accrued "insofar as such . . . liabilities . . . arise out of or are based upon any untrue statement or alleged untrue statement or alleged untrue statement of material fact contained in the . . . Prospectus Supplement." Musla Decl. 11, Exhibit 1.

In *Federal-Mogal Global, Inc.*, the Third Circuit contemplated whether thousands of state court personal-injury and wrongful-death claims asserted against non-debtor companies could be considered "related to" the bankruptcy estate of a potential indemnifier that initially manufactured the defective product.  300 F.3d 368 (2002). The Third Circuit held the claims were not sufficiently related since "any indemnification claims that the Friction Product Defendants might have against Debtors have not yet accrued and would require another lawsuit before they could have an impact on [the] bankruptcy proceeding." *Id.* at 382.  Similarly, even if the fraud originated with the Bankrupt Originators, like the defective products in *Federal-Mogal* may have originated with the manufacturers, the indemnification agreements did not accrue upon the filing of the present suit. Like in *Pacor*, this suit does not establish "automatic liability." 743 F.2d 984, 994. As such, the indemnification clauses do not confer "related to" jurisdiction in this case.

**NOT FOR PUBLICATION**

2.   Contingency of the Indemnity Clauses

Defendants also argue that even though the Bankrupt Originators' liability may not be established, "related to" jurisdiction is nonetheless proper. Opp. to Remand 7-12. Defendants refer to *Belcufine v. Aloe*, 112 F.3d 633 (3d Cir. 1997) and *In re Allegheny Health, Education and Research Foundation*, 383 F.3d 169 (3rd Cir. 2004), where the Third Circuit allowed indemnification claims that were "contingent" to confer "related to" jurisdiction. *Id.* at 176. But these cases are distinguishable.

In *Belcufine*, the Third Circuit considered whether employee indemnification claims against corporate managers under Pennsylvania law, as opposed to the bankrupt entity itself, conferred "related to" jurisdiction. The *Belcufine* employees argued that the indemnification claims did not impact the debtor's estate because they were "contingent" on a finding of the indemnifier's liability.  The Third Circuit concluded "[b]ased on the broad reach of the term 'related to' . . . at a minimum, the existence of this indemnification claim demonstrated that the employees' claims against the [corporate managers] could conceivably have an effect on the bankruptcy estate." *Id.* at 636. But in that case, the "contingency" was whether the corporate manager's liability, if confirmed in the suit, conceivably impacted the bankruptcy estate. In contrast, upon the resolution of the present suit – assuming Defendants are found to have acted fraudulently – there will still be an outstanding issue as to whether the Bankruptcy Originators in turn were liable for that fraud. This case is unlike *Belcufine*, and is too attenuated from the bankruptcy estate to confer "related to" jurisdiction.

Defendants also argue that the Bankrupt Originator's liability need not be resolved in order to confer "related to" jurisdiction. Opp. To Remand 7. In *In re Allegheny Health, Educ. and Research Foundation*, the Third Circuit held, "[t]he existence of subject matter jurisdiction

**NOT FOR PUBLICATION**

is determined before, not after, adjudication of the merits and depends on the nature, not the validity of the plaintiff's claim." 383 F.3d 169, 176 (3rd Cir. 2004). There, suit was brought against the buyer of a Chapter 11 debtor's assets concerning debts incurred after the asset purchase agreement. *Id.* In that case, the buyer sought indemnification directly from the debtor under certain contractual terms of the purchase agreement. *Id.* Resolution of the suit would determine whether or not the debtor was liable to the debt purchaser, directly implicating the debtor's estate. *Id.* The Third Circuit held liability need not be definitively established against the indemnifier if, upon finding of indemnification, the bankruptcy estate would be directly affected. *Id.* But here, as established above, resolution of the present suit does not establish the liability of the Bankruptcy Originators. Hence, *Allegheny* is inapposite because subject matter jurisdiction does not arise in the first instance and "related to" jurisdiction is not implicated.

      B.   <u>The Legal Expense Indemnification Agreement Does Not Confer To "Related To" Jurisdiction</u>

Defendants also claim that the agreement with Bankrupt Originator Fieldstone indemnifying Defendants for legal expenses gives rise to "related to" jurisdiction. The indemnification agreement states that Fieldstone "agrees to reimburse the Depositor and each such officer, director and controlling person promptly upon demand for any legal or other expenses reasonably incurred by any of them in connection with investigating or defending or preparing to defend against any such loss, claim, damage, liability or action as such expenses are incurred." Musla Decl. Ex. 6, ¶ 1a. But further investigation of this indemnification agreement reveals that Fieldstone is only liable for "any such loss","insofar as such losses, claims, damages, or liabilities . . . arise out of or are based in whole or in part upon any untrue statement or alleged untrue statement of material fact contained in the Fieldstone Information." *Id.* Thus, the clause

**NOT FOR PUBLICATION**

would mature in a suit to establish Fieldstone's liability. Here, the suit does not concern the non-party Fieldstone's liability, it concerns Defendants' liability. Like the indemnification clauses above, this clause did not accrue upon the filing of the present suit and "related to" jurisdiction does not arise.[4]

## II.     Abstention

Plaintiffs urge this Court to exercise its equitable powers and abstain from this case by remanding to state court. Mot. for Remand 17-20. This Court determines that even if "related to" jurisdiction were proper, abstention would be appropriate. While federal courts have a wide grant of jurisdictional power to settle bankruptcy estates, federal courts may decline jurisdiction over actions properly removed under Section 1334(b). Section 1452 permits the District Court to "remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). And Section 1334(c)(1) provides for permissive or discretionary abstention, permitting a district court to abstain in the interests of justice and comity or out of respect for state law:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

The considerations relevant to determine the appropriateness of equitable remand and permissive abstention under Sections 1452(b) and 1334(c)(1) are essentially identical. *See Balcor,* 181 B.R. at 788; *In re Joshua Slocum, Ltd.,* 109

---

[4]     Plaintiffs also argue "related to" jurisdiction does not arise because "none of Defendants' purported contingent indemnity claims will actually result in a meaningful distribution from any bankruptcy estate." Mot. To Remand 11. Because this court finds the indemnification clauses do not give rise to "related to" jurisdiction, we need not reach the merits of these arguments.

**NOT FOR PUBLICATION**

B.R. 101, 105 (E.D. Pa. 1989). "Among the factors to be considered by courts in making a decision whether to abstain and remand are the following:

> (1) the effect on the efficient administration of the bankruptcy
>
> estate;
>
> (2) the extent to which issues of state law predominate;
>
> (3) the difficulty or unsettled nature of the applicable state law;
>
> (4) comity;
>
> (5) the degree of relatedness or remoteness of the proceeding to the
>
> main bankruptcy case;
>
> (6) the existence of the right to a jury trial; and
>
> (7) prejudice to the involuntarily removed defendants.

*In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 760 (D.N.J. 1996) (internal citations omitted). Upon review of the factors, remand is appropriate here.

First, judicial economy does not dictate that this Court hear this action. Defendants argue that because "this case may conceivably affect the efficient administration of [the Bankrupt Originator's] estates because of the potential liability and costs, including attorneys' fees, covered by the indemnification agreements" this matter should remain in federal court. Opp. to Remand 19. But none of the pending bankruptcies are before this Court and the bankruptcy proceedings of the Bankrupt Originators are being handled by a variety of federal bankruptcy courts throughout the country. *See* Not. of Removal 5. Thus, regardless of whether this Court or the state court establishes liability, subsequent costs, or "conceivabl[e] affect[s]," efficacy would be the same. Opp. to Remand 19.

**NOT FOR PUBLICATION**

Second, state law issues predominate.  Plaintiffs filed four state law claims, including two for fraud, one for negligent misrepresentation, and one under New Jersey's state RICO statute. While Plaintiffs also filed two causes of action under the federal 1933 Securities Act, these federal claims are generally non-removable when filed in state court, highlighting Congress' comfort with state court adjudication of them. *See* 15 U.S.C. § 77v(a). State claims predominate.

Third and fourth, while Plaintiff's state law claims for fraud and negligent misrepresentation are fairly routine, Plaintiff points out that New Jersey's RICO count is significantly different from the comparable federal RICO statute. *See State v. Ball*, 141 N.J. 142, 160-162 (1995) (outlining differences between the New Jersey RICO and federal RICO laws); *see also Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 254-55 (D.N.J. 2000). The complexity of the state law RICO claim and comity considerations favor remand. While federal courts have, on occasion, presided over New Jersey RICO cases, Opp. to Remand 20, as a general matter state courts are better equipped to handle their own particular laws. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966).

Fifth, this case is remote relative to the proceedings of the main bankruptcy cases.  The liabilities of the Bankrupt Originators are not going to be decided here. What is more, Defendants have failed to timely file claims against the Bankrupt Originator's Bankruptcy estates, and the claims bar dates in many of these cases have passed, making recovery unlikely. Grossman Decl. Exs. 2-6, 14.

**NOT FOR PUBLICATION**

Finally, the sixth and seventh factors, the right to jury trial and prejudice to the involuntarily removed defendants, are inapplicable, as recognized by all parties. Mot. to Remand, FN 6 ; Opp. to Remand, 21.

In sum, abstention is appropriate. By so concluding, this Court joins several federal courts in reaching this conclusion under similar facts. *Charles Schwab Corp. v. BNP Paribas Secs.*, No. C 10-104030, 2011 WL 724696, at *2-4 (N.D. Cal. Feb. 23, 2011); *Fed. Home Loan Bank of San Francisco v. Deutsche Bank Secs.,Inc.*, Nos 10-3039, 2010 WL 5394742, at *11 (N.D. Cal. Dec.20, 2010); *Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.* No. C10-0139, 2010 WL 3662345, at *7 (W.D. Wash. Sept. 1, 2010); *Fed. Home Loan Bank of Seattle v. Deutsche Bank Secs.*, Inc. 736 F. Supp. 2d 1283, 1290-91 (W.D. Wash. 2010).

### III.    The Edge Act

Defendants argue this Court has subject matter jurisdiction over this case under the Edge Act. 12 U.S.C. §632; Opp. to Removal 24. State actions involving international banking can be designated as "federal question" actions pursuant to the Edge Act if an action involves a "corporation organized under the laws of the United States," and "arises out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations." 12 U.S.C. § 632.

To meet the first requirement Defendants assert there are two national banks, "organized under the laws of the United States" relevant to this case. 12 U.S.C. § 632. Both parties agree Plaintiff Prudential Bank is a federally chartered bank. Opp. to Removal 25; Reply to Remand 9.

14

**NOT FOR PUBLICATION**

Defendants also argue that the successor by merger to Defendant Chase Home Finance, LLC – JP Morgan Chase Bank, N.A. – is a federally chartered bank. Opp. to Removal 25.[5]

Second, Defendants claim the "action arises out of transactions involving international or foreign banking" because one of the twenty-three securitizations at issue, BSABS 2005-FRI, was bought by Plaintiff, The Gibraltar Life Insurance Company Co., Ltd., a life insurance company formed under the laws of Japan. 12 U.S.C. § 632; Opp. to Removal 25.

However, the purchase of BSABS 2005-FRI did not involve defendant Chase Home Finance or its successor in interest JP Morgan Chase Bank. Compl. ¶¶ 15-16 & Ex. B at B-2. Chase Home Finance was only involved in the purchase of three securitizations CFLAT 2004-AQ1, CHASE 2007-A1, CHASE 2007-A2 and was not involved in the purchase of BSABS 2005-FRI. Compl. ¶ 24 & Ex. A at A-2.

This Court agrees with Plaintiffs that because the national bank involved – JP Morgan Chase Bank – does not have an interest in the claim arising out of the transactions involving international or foreign banking – BSABS 2005-FR1 – Edge Act jurisdiction is not appropriate. Mot. to Remove 22-24. *See Allstate Insurance Co. v. CitiMortgage, Inc.*, No. 11 Civ. 1927 2012 WL 967582 at *3 (S.D.N.Y March 13, 2012) (finding no Edge Act jurisdiction since the national bank "was not a party to the . . . securitization, which is the only securitization that contained territorial mortgages"); *Societe d' Assurance De L'Est SPRL v. Citigroup Inc.*, No. 10 Civ. 4754 2011 WL 4056306 at *4 (S.D.N.Y Sept. 13, 2011) ("Jurisdiction under the Edge Act 'will lie only if [a national bank defendant] has potential liability to the plaintiff.") (quoting *Papadopoulos v. Chase Manhattan Bank, N.A.*, 791 F. Supp. 72, 74 n.4 (S.D.N.Y. 1990) (granting a motion to dismiss for lack of subject matter jurisdiction).

---

[5]     Plaintiffs question whether this Court can consider the status of an unnamed defendant. Mot. to Remove 22 n.1. Because we reach that the Edge Act does not confer jurisdiction on alternative grounds, we need not reach the merits of this challenge.

**NOT FOR PUBLICATION**

Defendants rely upon a Southern District of New York case which in dicta stated that it was "not convinced that the Edge Act requires a perfect match between the particular entity involved in the territorial transaction and the party against whom the claim is brought." *Am. Int'l Group, Inc. v. Bank of Am. Corp.,* 820 F. Supp. 2d 555, 557-58 (S.D.N.Y. 2011) *motion to certify appeal granted, reconsideration denied*, 11 CIV. 6212 BSJ, 2011 WL 6778473 (S.D.N.Y. Dec. 20, 2011).

But we agree with the majority of courts that Edge Act jurisdiction does not arise "merely because there was a federally chartered bank involved, there were banking-related activities, and there were foreign parties." *Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*, 2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011) (quoting *Bank of N.Y. v. Bank of Am.,* 861 F.Supp. 225, 232 (S.D.N.Y.1994)) (internal quotation marks and citation omitted). To resay, there was no connection between the federal chartered bank and banking-related activities involving a foreign party, so Edge Act jurisdiction is not appropriate.

## IV.    Attorney's Fees

As a final matter, Plaintiffs have requested attorney's fees, costs, and expenses. Mot. to Remand 30. Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Awards are only proper under §1447(c) if "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 131, 141 (2005). Defendants were reasonable seeking removal. Although "related to" jurisdiction is not appropriate here, another district court concluded differently under similar facts. There, the district court concluded an indemnification agreement of a bankrupt non-party conferred "related to" jurisdiction. *See Stitching Pensioenfonds ABP v. Countrywise Fin. Corp.*, 447 B.R.302, 309 (C.D. Ca. 2010). Plaintiffs' request for attorney's fees, costs, and expenses is denied.

16

**NOT FOR PUBLICATION**

## CONCLUSION

Plaintiffs' motion for remand is granted. Plaintiffs' request for attorney's fees is denied.

December 12, 2012

<u>**s/ William H. Walls**</u>
United States Senior District Judge